**[ECF No. 37]**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **TREMAYNE DURHAM,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CAPITOL HEALTH REGIONAL MEDICAL CENTER, et al.,**<br><br>**Defendants.** | **Civil No. 25-6823 (KMW/EAP)** |

## MEMORANDUM ORDER

This matter comes before the Court on *pro se* Plaintiff Tremayne Durham's Motion for Appointment of Counsel. ECF No. 37 (Pl.'s Mot.). Defendants have taken no position with respect to Plaintiff's Motion. ECF No. 39 (Defs.' Ltr.). The Court exercises its discretion to decide Plaintiff's Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the following reasons, Plaintiff's Motion is **DENIED WITHOUT PREJUDICE**.

## FACTUAL BACKGROUND

According to the Complaint, on January 3, 2018, Plaintiff, a prisoner at the New Jersey State Prison ("NJSP"), was diagnosed with lumbar stenosis, which limits his walking and standing. ECF No. 1 (Compl.) ¶ 17. On March 17, 2022, Plaintiff was seen for pain management related to his severe back pain. *Id.* ¶ 18.

Plaintiff alleges that on December 22, 2023, he was being transferred to Capitol Health Regional Medical Center ("Capitol Health") from the prison infirmary for treatment of a back injury he sustained earlier in the day. *Id.* ¶ 19. Plaintiff was placed on a stretcher in hand and leg restraints and then transferred into an emergency van. *Id.* ¶¶ 19-20. When Plaintiff asked two

EMS workers if it was possible to loosen the restraints, the EMS workers responded that they could not. *Id.* ¶¶ 20-21. Plaintiff alleges that, upon arrival at Capitol Health, he stood up to be escorted by Defendant Correctional Officers Gordon Demetzky and Michael Davila and his leg cuffs cut into his ankles. *Id.* ¶ 22. When Plaintiff asked Demetzky to loosen the handcuffs and leg cuffs due to pain, Demetzky replied, "explain to me about this past escape attempt first I see this in your jacket [*i.e.*, file with personal information]." *Id.* ¶ 23. Plaintiff questioned what his "past institutional record" had to do with his request, but Demetzky refused to loosen the cuffs. *Id.* ¶¶ 24-25. Plaintiff then asked Davila to loosen his cuffs, but Davila said he would have to call his supervisor. *Id.* ¶ 26. According to Plaintiff, he was in pain for hours and was never told if a supervisor approved or denied his request for the cuffs to be loosened. *Id.* ¶ 27. Plaintiff then repeated his request for the hand and leg cuffs to be loosened to Disney Paige, R.N., and PA-C A. Kusnirik. *Id.* ¶¶ 27a-28. According to Plaintiff, Kusnirik said, "I believe your hand cuffs and leg cuffs should be loosened[,]" but Defendants Demetzky and Davila refused to loosen the restraints. *Id.* ¶ 28.

Plaintiff subsequently "requested privacy prior to any medical questions from [K]usnirik," but Kusnirik said that prison policy required correctional staff to be present. *Id.* ¶ 28a. Plaintiff then had to expose his buttocks in front of Davila and Demetzky to have a rectal examination, even though there was a partition several feet away. *Id.* ¶ 29. Thereafter, Defendant Destiny Warriner, R.N., asked Plaintiff medical questions in front of Demetzky and Davila, even though Plaintiff never gave the nurse permission to do so. *Id.* ¶ 30. Demetzky and Davila stated that it was New Jersey Department of Corrections' policy that they remain present. *Id.*

Later that day, Plaintiff was seen by Stephanie V. Munn, PA-C, at which time Plaintiff again requested privacy and asked that the hand and leg cuffs be loosened. *Id.* ¶ 30a.[1] Plaintiff alleges that Munn said it was "up to the officers" and that Demetzky and Davila denied Plaintiff's requests despite Plaintiff's pain caused by the leg cuffs cutting into his ankles. *Id.*

After Plaintiff was admitted to the hospital, John Doe Correction Officer 1 removed the hand and leg cuffs and replaced them with plastic flex cuffs. *Id.* ¶ 31. At that time, John Doe Correction Officer 1 purportedly commented, "wow these hand cuffs and leg cuffs were really tight on you." *Id.* ¶ 32. Plaintiff requested medical attention for his swollen and bleeding wrists and ankles, but John Doe Correction Officer 1 stated that there was nothing he could do. *Id.* ¶¶ 33-34. Overall, Plaintiff alleges that he spent approximately nine hours in the tight handcuffs and leg cuffs. *Id.* ¶ 35.

On December 23, 2023,[2] Plaintiff was discharged from the hospital and returned to the NJSP medical clinic. *Id.* ¶ 36. Upon arrival, Plaintiff complained to a medical provider about his ankles and wrists, but the clinic allegedly did nothing. *Id.* ¶¶ 36-37. On December 27, 2023, Plaintiff sent an MR-007 (Health Request Form) to the medical department to receive treatment for his wrists and ankles, which remained numb and painful for approximately thirty days. He received no treatment. *Id.* ¶¶ 38-39.

On October 16, 2024, Plaintiff filed an inquiry to put an end to this practice. *Id.* ¶ 40. On October 18, 2024, Major Craig Sears responded, "your restraints were not on too tight since you and your extremities survived without incident . . ." *Id.* ¶¶ 8, 41 & Ex. B-1. Plaintiff then filed a

---

[1] Plaintiff's Complaint contains two paragraphs numbered "30." For clarity of reference, the Court will refer to the second paragraph 30 as "30a."

[2] Although the Complaint states that hospital staff discharged Plaintiff on December 23, 2025, the Court finds that the stated date is incorrect because the Complaint was filed on June 2, 2025. The Court relies on the hospital note attached to the Complaint at Exhibit A-7, which identifies Plaintiff's discharge date as December 23, 2023.

grievance on October 20, 2024, which Derrick Bodtmann denied on November 8, 2024. Compl. ¶¶ 42-43 & Ex. B-2. Plaintiff appealed Bodtmann's decision, but his appeal was denied. Compl. ¶¶ 44-45 & Ex. B-2.

On June 2, 2025, Plaintiff filed his Complaint against Defendants Capitol Health Regional Medical Center, New Jersey State Prison, Administrator Jeffrey Crothers, Assistant Administrator Derrick Bodtmann, Major Craig Sears, Major Gordon Demetzky, Correctional Officer Michael Davila, EMT A. Parigi, EMT A. Berry, Destiny Warriner, R.N., Stephanie Munn, PA-C, A. Kusnirik, PA-C, and Disney Paige, R.N. *See id.* Plaintiff alleges the following causes of action: (1) violation of Eighth Amendment rights (deliberate indifference), *id.* ¶¶ 51-63 (Count I); (2) intentional or malicious harm to another, *id.* ¶¶ 64-66 (Count II); (3) aiding the commission of tort, *id.* ¶¶ 67-68 (Count III); (4) breach of duty proximately causing damage, *id.* ¶¶ 69-70 (Count IV); (5) careless contractual work injuring [an]other, *id.* ¶¶ 71-72 (Count V); (6) emotional distress negligently inflicted, *id.* ¶¶ 72a-73[3] (Count VI); (7) enhancing risk of physical harm, *id.* ¶¶ 74-76 (Count VII); and (8) physician or hospital violating patient confidentiality, *id.* ¶¶ 77-79 (Count VIII). Following *sua sponte* screening of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismissed all claims except for Plaintiff's Eighth Amendment and negligence claims against Defendants Correctional Officers Gordon Demetzky and Michael Davila. ECF No. 3 (Order).

The Court entered an Initial Scheduling Order on January 29, 2026. ECF No. 27 (Initial Scheduling Order). On April 14, 2026, following a status conference, the Court entered an Amended Scheduling Order. ECF No. 36 (Amended Scheduling Order). Thereafter, on April 30, 2026, Plaintiff filed the present Motion seeking appointment of *pro bono* counsel, claiming that

[3] Plaintiff's Complaint contains two paragraphs numbered "72." For clarity of reference, the Court will refer to the second paragraph 72 as "72a."

he is unable to afford counsel; he has been denied access to documents needed to prosecute his case because they were designated as "Attorney's Eyes Only"; he is not allowed to have a typewriter; a trial will likely involve conflicting testimony; a lawyer would help him apply the law properly; the inmate who assisted him with his Complaint has refused to offer any further help due to that inmate's own obligations; Plaintiff's imprisonment will limit his ability to research and investigate his case; Plaintiff has limited access to the law library and limited knowledge of the law; Plaintiff has been diagnosed with presbyopia and myopia, meaning he has difficulty seeing far and near; and Plaintiff has attempted to obtain legal representation but has received no response. *See* Pl.'s Mot. ¶¶ 1-9. Defendants have taken no position on Plaintiff's Motion. *See* Defs.' Ltr.

**DISCUSSION**

Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Nevertheless, Congress has granted district courts statutory authority to request that an attorney represent indigent civil litigants. *See* 28 U.S.C. § 1915(e)(1) (providing that "[t]he court may request an attorney to represent any person unable to afford counsel"). The United States Court of Appeals for the Third Circuit has interpreted § 1915 as affording district courts "broad discretion" to determine whether appointment of counsel in a civil case would be appropriate. *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). The decision to appoint counsel may be made at any point in the litigation and may be raised by a district court *sua sponte*. *Id.* at 156.

In *Tabron*, the Third Circuit developed a list of criteria to aid district courts in determining whether to appoint counsel for indigent civil litigants. *Id.* at 155-57. As a threshold matter, a district court must assess whether the claimant's case has some "arguable merit in fact and law." *Tabron*, 6 F.3d at 155; *see also Parham*, 126 F.3d at 457. If a claimant overcomes this threshold

hurdle, the district court should consider a number of additional factors in assessing a claimant's request for counsel, including (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the extent to which a case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) the plaintiff's capacity to retain counsel on his or her own behalf. *Tabron*, 6 F.3d at 155-57. "[T]his list of factors is not exhaustive, but instead should serve as a guidepost for the district courts." *Parham*, 126 F.3d at 458 (citing *Tabron*, 6 F.3d at 155). In addition, the Third Circuit cautioned that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Id.* at 458 (citing *Tabron*, 6 F.3d at 157); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

Here, without engaging in an extensive analysis of the Complaint's substantive merit, the Court will assume—solely for the purpose of this Motion—that Plaintiff has satisfied his threshold burden of presenting a claim with some arguable merit in fact and law. The Court has already screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and found that his Eighth Amendment and negligence claims against Defendants Demetzky and Davila related to their refusal to loosen his hand and leg cuffs stated plausible grounds for relief. ECF No. 3 (Order) at 3, 8-9. Accordingly, the Court turns to the question of whether the appointment of counsel is warranted under the *Tabron* factors.

The first *Tabron* factor requires an evaluation of whether the litigant can present his or her own case. *Montgomery*, 294 F.3d at 501. This factor will weigh against the appointment of counsel where the litigant is capable of pursuing his or her own action. *See Gordon v. Gonzalez*, 232 F. App'x 153, 157 (3d Cir. 2007). This capability should be measured through an analysis of the litigant's literacy, education, ability to understand English, prior work experience, and prior

litigation experience. *Tabron*, 6 F.3d at 156. This factor constitutes "[p]erhaps the most significant of Tabron's post-threshold factors." *Montgomery*, 294 F.3d at 501.

A review of the record indicates that Plaintiff is competent and capable of litigating this matter at this stage. Plaintiff's filings with the Court demonstrate his ability to adequately read, write, and understand English and navigate the legal process. Although Plaintiff claims to have had the assistance of another inmate, Plaintiff was able to initiate this action through a complaint. While several of his claims were dismissed, he competently set forth some causes of action that survived screening under § 1915(e)(2)(B). ECF No. 3 (Order). Plaintiff then successfully moved for an extension of time to serve Defendants and subsequently completed the USM-285 forms required for the U.S. Marshals Service to effect service on the Defendants. ECF Nos. 11 (Ltr.), 12 (Summons). Thereafter, in response to Defendants' motion to dismiss for lack of jurisdiction, ECF No. 18 (Mot. to Dismiss), Plaintiff successfully obtained an extension of time to respond and then filed a substantive opposition to the motion, ECF Nos. 19 (Pl.'s Ltr.), 20 (Order), 21 (Pl.'s Opp.). Defendants then withdrew their motion, ECF No. 22 (Defs.' Ltr.), and filed an answer, ECF No. 24 (Answer). The Court entered an Initial Scheduling Order without a conference on January 29, 2026. ECF No. 27 (Scheduling Order). On April 14, 2026, the Court conducted a status conference with the parties, at which time Plaintiff appeared and represented that he had served discovery requests on Defendants, had not received any discovery requests from Defendants, and was considering amending the Complaint to add one more party. *See* ECF No. 33 (Apr. 14, 2026 Minute Entry). Plaintiff also discussed settlement and indicated his intention to make a demand. *Id.* Two weeks after the conference, Plaintiff filed the current Motion to Appoint *Pro Bono* Counsel, attaching both the responses to his discovery requests and his requests for legal representation. Pl.'s Mot. The Court has since conducted two additional status conferences with the parties, during which Plaintiff effectively represented his own interests. *See* ECF No. 41 (June

16, 2026 Minute Entry); ECF No. 58 (Aug. 11, 2026 Minute Entry). And, on June 25, 2026, Plaintiff filed a Motion to Compel Discovery.

In his filings and during his Court appearances, Plaintiff has not alleged any limitations involving his education, literacy, or ability to understand English. Although Plaintiff states that he "has limited access to the law library and limited knowledge of the law," Pl.'s Mot. ¶ 7, this fact applies to most *pro se* litigants, and standing alone, does not require the appointment of counsel. *See Cousar v. Stack*, No. 20-1259, 2022 WL 376618, at *1 (D.N.J. Feb. 8, 2022) ("[A] lack of legal experience alone is not a basis for appointing counsel, because it is a limitation held in common by most *pro se* parties" (internal quotation omitted)). Moreover, while Plaintiff claims that his eye condition limits his ability to read and research, Pl.'s Mot. ¶ 8, his filings and participation in conferences demonstrate his ability to competently represent his own interests and pursue this litigation. Accordingly, this factor weighs against appointment of counsel.

The second factor concerns the complexity of the legal issues presented in the case. Courts should be more inclined to appoint counsel when the legal issues are complex. *Tabron,* 6 F.3d at 156 ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." (internal quotation omitted)). The record does not indicate that Plaintiff's remaining claims—arising from Defendants' alleged refusal to loosen his hand and leg cuffs—involve complex legal issues. Therefore, the second *Tabron* factor weighs against the appointment of counsel.

The third factor focuses on the degree and/or difficulty of any expected factual investigation the case may require and Plaintiff's ability to conduct such an investigation. *Tabron*, 6 F.3d at 156. Claims that are likely to require extensive discovery and compliance with complex discovery rules may warrant the appointment of counsel. *Id.* The Court's review of Plaintiff's remaining claims does not suggest that any investigation in this case will be extensive or that the

discovery will be beyond Plaintiff's capabilities.[4] As such, the Court finds that the third *Tabron* factor weighs against the appointment of counsel.

The fourth factor for consideration is the likelihood that a case will turn on credibility determinations. *Id.* While most cases turn on credibility determinations, this factor will only weigh in favor of the appointment of counsel where the trial is expected to be "solely a swearing contest." *Parham,* 126 F.3d at 460. Thus, in considering this factor, a court must evaluate the degree to which "witness credibility is a key issue." *Tabron,* 6 F.3d at 156 (citation omitted). Plaintiff contends that there may be conflicting testimony, which may turn on a credibility determination, rendering the appointment of counsel appropriate. Pl.'s Mot. ¶ 4. The Court recognizes that some credibility issues may come into play here, but it cannot yet determine the extent to which those issues will control the outcome. Nonetheless, at this stage, the Court finds that the fourth *Tabron* factor weighs slightly in favor of appointment of counsel.

The fifth factor considers the extent to which expert testimony may be required. *Tabron*, 6 F.3d at 156. Where a case will likely require such testimony, the appointment of counsel may be warranted. *Id.* The Third Circuit, however, has noted that appointment of counsel is not required in every case where expert testimony may be warranted. *See Lasko v. Watts*, 373 F. App'x 196, 202 (3d Cir. 2010). Plaintiff's Motion does not address the fifth factor, and Plaintiff does not argue that expert testimony will be necessary to present his claims. Moreover, a review of Plaintiff's Complaint does not highlight, at this stage, any allegations that are inordinately difficult

---

[4] Plaintiff argues that he is being denied access to certain documents crucial to his case because Defendants have produced them under the designation of "Attorney's Eyes Only" pursuant to the parties' Confidentiality Order. Pl.'s Mot. ¶ 2 & Ex. A. The Court addressed this issue with the parties at the June 16, 2026 status conference, *see* ECF No. 41, and Defendants' June 29, 2026 letter confirms that Defendants will provide the requested documents in an appropriately redacted form. ECF No. 48 (June 29, 2026 Ltr.). To the extent Defendants seek to shield additional documents from Plaintiff's review in the future, they must first seek relief from the Court.

to prove without the assistance of an expert witness. Accordingly, the Court finds that the fifth *Tabron* factor weighs against the appointment of counsel.

The final *Tabron* factor considers whether the litigant is financially capable of retaining his own counsel. *Parham,* 126 F.3d at 461. The Court notes that Plaintiff was granted *in forma pauperis* status, supporting his asserted inability to afford counsel. *See* ECF No. 3 (Order). Moreover, the Court remains cognizant that Plaintiff is incarcerated and potentially lacks access to a source of income. That factor alone, however, does not require the Court to appoint *pro bono* counsel. *See Christy v. Robinson*, 216 F. Supp. 2d 398, 410-11 (D.N.J. 2002) (denying application for *pro bono* counsel where indigency was the "only one of the six factors . . . weigh[ing] in favor of the appointment of counsel . . . ."). Nonetheless, the Court finds that the final *Tabron* factor weighs in favor of the appointment of counsel.

**CONCLUSION**

Only one of the six *Tabron* factors weighs fully in favor of the appointment of counsel, one weighs only slightly in favor of appointment, and the remaining four weigh against appointment. On balance, the *Tabron* factors do not support the appointment of counsel at this stage. Therefore, the Court denies Plaintiff's Motion without prejudice. As this case proceeds, Plaintiff may renew his Motion if new circumstances warrant the appointment of counsel.

Accordingly, for the foregoing reasons,

**IT IS** this **6th** day of **October 2026**,

**ORDERED** that Plaintiff's Motion for Appointment of Counsel, ECF No. 37, is **DENIED WITHOUT PREJUDICE**. This Order is entered without prejudice to Plaintiff's right to renew his motion if warranted by material, relevant developments or a change in circumstances; and it is further

**ORDERED** that the Clerk's Office shall forward a copy of this Order to Plaintiff at his address of record via regular mail and shall enter a notation on the docket indicating the date on which this Order was mailed.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Hon. Karen M. Williams, U.S.D.J.